UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELISSA DENEAU,<br><br>        Plaintiff,<br><br>    v.<br><br>COASTAL HOME CARE SERVICES, INC., et al.,<br><br>        Defendants. | Case No. 24-cv-02200-PCP<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. No. 15 |

Plaintiff Melissa Deneau alleges that defendants Coastal Home Care Services, Inc. and Rehabfocus Home Health, Inc. violated state and federal labor laws during her employment. Defendants now move to compel arbitration pursuant to two agreements from 2015 and 2021 between Deneau and defendants' parent company Covenant Care. For the following reasons, the Court grants defendants' motion to compel arbitration pursuant to the 2021 agreement.

## BACKGROUND

Coastal and Rehabfocus provide a suite of home healthcare services throughout the United States.[1] Deneau was employed by defendants in California as a medical social worker from 2014 until 2024, when Deneau alleges that she was forced to resign. Deneau also alleges that in April 2022, when she developed physical disabilities arising from injuries at work, defendants failed to make reasonable accommodations available to her, resulting in her constructive discharge. Deneau alleges that her doctor diagnosed her with serious back pain and recommended that she not drive more than two hours per day, but defendants failed to make reasonable accommodations such as providing transportation so that she did not have to drive to visit her clients, transferring her

---

[1] The following facts are drawn from Deneau's complaint. Dkt. No. 1.

clients who lived far away to other employees, or allowing her to work remotely. Deneau further alleges that defendants failed to provide her with reporting time pay on the days that she worked fewer than four hours and failed to pay her for accrued paid time off (PTO).

Deneau twice demanded arbitration of her employment-related disputes pursuant to the 2015 agreement. Her first demand letter was sent pro se to Covenant Care on December 22, 2023. Deneau alleges that she did not receive a response to that demand. After obtaining representation, she again sent a demand letter on March 5, 2024, this time to both Covenant Care and Rehabfocus Home Health, Inc. In the second letter, Deneau's counsel requested that Covenant Care provide a list of agreeable arbitrators within a week. On March 18, 2024, defendants' counsel sent Deneau a stipulation for binding arbitration, and Deneau's counsel sent defendants a revised stipulation the following day. But on March 26, 2024, Deneau's counsel communicated to defendants that Deneau did not agree to any stipulation for binding arbitration.

In her complaint filed on April 12, 2024, Deneau asserts the following claims: (1) failure to engage in a timely, good faith interactive process in violation of California law; (2) failure to make reasonable accommodations in violation of California and federal law; (3) disability-based employment discrimination in violation of California and federal law; (4) retaliation for requesting accommodations in violation of California and federal law; (5) wrongful discharge in violation of public policy set forth in California and federal law; and (6) failure to provide reporting time pay and pay for accrued PTO in violation of the California Labor Code.

Defendants move to compel arbitration of Deneau's claims pursuant to two alleged agreements between Deneau and defendants. The 2015 agreement is between Deneau and Covenant Care, defendants' purported parent company, and includes Deneau's wet signature from February 26, 2015. Dkt. No. 15-3, at 7. The 2021 agreement is between Deneau and "Covenant Care and its successors, predecessors, affiliates, subsidiaries, parent companies, directors, owners, investors, insurers, officers, employees, supervisors and agents" and was sent electronically to employees. *Id.* at 9. According to defendants, Deneau sent the 2021 agreement back to them as an email attachment with her electronic signature on August 30, 2021. *Id.* at 93. Defendants contend that this signed agreement was then placed in her personnel file. *Id.* at 95. Deneau states that she

does not recall signing the agreement, that she generally would not have done so electronically, and that the agreement was returned to defendants at a time (around midnight) when she would not have been working.

## LEGAL STANDARDS

The Federal Arbitration Act (FAA) provides that a "written provision in … a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. As this language makes clear, "an arbitration agreement is a contract like any other." *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1009 (9th Cir. 2023). The FAA "requires courts to rigorously enforce agreements to arbitrate." *Johnson v. Walmart, Inc.*, 57 F.4th 677, 681 (9th Cir. 2023). Like other contracts, arbitration agreements are subject to "generally applicable contract defenses" like "fraud, duress, or unconscionability." *Lim v. TForce Logs.*, LLC, 8 F.4th 992, 999 (9th Cir. 2021).

In deciding on a motion to compel arbitration, a court must determine "(1) whether a valid agreement exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys. Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Formation challenges to an arbitration agreement are a matter of state law. *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022) ("In determining whether the parties have agreed to arbitrate a particular dispute, federal courts apply state-law principles of contract formation.").

If the Court is "satisfied that the making of the agreement for arbitration … is not in issue" it must "make an order directing the parties to proceed to arbitration." 9 U.S.C. § 4. But if there is a genuine dispute of material fact in this regard, "the court must proceed summarily to the trial thereof." *Id.* The summary judgment standard applies. *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021). The Court must "give to the opposing party the benefit of all reasonable doubts and inferences." *Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 963 (9th Cir. 2007).

## ANALYSIS

The only significant issue in dispute between the parties is whether Deneau ever entered into an agreement to arbitrate her claims against defendants. Deneau argues that the 2015

agreement with Covenant Care does not extend to her claims against defendants because they are legally distinct from Covenant Care, and that the 2021 agreement is not valid because she never signed it.

To form an arbitration agreement, the FAA "requires a writing" but "does not require that the writing be signed by the parties." *Nghiem v. NEC Elec., Inc.*, 25 F.3d 1437, 1439 (9th Cir. 1994). Federal courts "should apply ordinary state-law principles that govern the formation of contracts" to determine whether an arbitration agreement was validly formed. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Under California law, "a party's acceptance [to a contract] may be implied in fact … even if the party never actually read the clause." *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012) (citing *Craig v. Brown & Root, Inc.*, 84 Cal. App. 4th 416, 420 (2000) (finding that an "employee's continued employment constitutes her acceptance of an arbitration agreement proposed by her employer")).

The Court will first consider whether the parties formed an agreement to arbitrate in 2021. In support of their motion, defendants argue that Deneau both received the 2021 agreement via email in August 2021 and electronically signed the agreement by typing her name into the signature line and returning it by email. Deneau does not contest that she *received* the 2021 agreement via email, but contends that she has no knowledge of signing the document or sending it back to defendants. She states that it is not her "practice to just type [her] named onto an important document like an arbitration agreement" and that she would typically "sign it by hand." Dkt. No. 18, at 15. Deneau also notes that the document was sent back to defendants around midnight, *see* Dkt. No. 15-3, at 89, and that she never worked that late. Finally, Deneau suggests that she was not the only person with access to her email account or Samsung tablet.

Defendants reply that even if Deneau did not electronically sign the 2021 agreement, under California law her receipt of the 2021 agreement and continued employment thereafter suggest that she acquiesced to the terms of the agreement.

4

The Court agrees with defendants and finds that Deneau is bound by the 2021 arbitration agreement.[2] Whether or not defendants have met their burden to establish beyond genuine dispute that Deneau electronically signed the 2021 agreement, there is no dispute that she received the agreement by email in August 2021. Under the specific circumstances presented, her continued employment for more than two years after receiving the mandatory arbitration agreement constitutes implied-in-fact acceptance of its terms under California law. *Pinnacle*, 55 Cal. 4th at 236.

California courts consider various factors to determine whether continued employment constitutes acceptance of an arbitration agreement, including whether: (1) the employee received express notice of the employer's arbitration agreement, *see Craig v. Brown & Root, Inc.*, 84 Cal. App. 4th 416, 419 (2000) (finding sufficient notice of an agreement to arbitrate because the employee received a memorandum informing them of the employer's new alternative dispute resolution program); (2) the employer's arbitration policy was clearly described in a document sent to the employee, *see, e.g.*, *Harris v. TAP Worldwide, LLC*, 248 Cal. App. 4th 373, 378 (2016) (compelling arbitration where an alternative dispute resolution agreement detailing the company's arbitration policy was attached as an appendix to an employee handbook); *Craig*, 84 Cal. App. 4th at 420 (finding that the parties had agreed to arbitrate where the employee continued employment after receiving a brochure describing the alternative dispute resolution program in great detail); and (3) whether the employee's continued employment was explicitly conditioned on acceptance of the arbitration agreement, *see Harris*, 248 Cal. App. 4th at 379 (compelling arbitration where agreement expressly stated, "If Employee voluntarily continues his/her employment with TAP … Employee will be deemed to have knowingly and voluntarily consented to and accepted all of the terms and conditions set forth herein without exception.").

All three factors are present here. First, the email that Deneau received in August 2021 expressly notified her of Covenant Care's alternative dispute resolution program. Dkt. No. 15-3, at

---

[2] Because the Court grants defendants' motion to compel arbitration pursuant to the 2021 agreement, it need not address the arguments made regarding the 2015 agreement.

33 (informing Deneau of an attached document entitled "Covenant Care – Employee Mutual Arbitration Agreement"). Second, the arbitration agreement attached to the August 2021 email clearly described the procedural details of Covenant Care's arbitration policy under JAMS Rules. *Id.* at 10 (detailing how an employee could initiate arbitration, the rules that governed discovery and evidence, and the available remedies). And third, the arbitration agreement explicitly conditioned Deneau's continued employment on acceptance of the terms therein. *Id.* at 9 ("If you decide to accept employment or remain employed with Employer, you are agreeing to enter into this Agreement, and both you and Employer will be bound by the provisions of this Agreement and the procedures set forth herein."). This provision is very similar to the provision at issue in *Harris*, which the court enforced notwithstanding the lack of an employee signature on the agreement. *Cf. Mar v. Perkins*, 102 Cal. App. 5th 201, 213 (2024) (finding that employee did not agree to arbitrate by remaining employed because continued employment was not explicitly conditioned on acceptance of the arbitration agreement's terms).[3]

Accordingly, under the relevant California law, Deneau's continued employment after receiving notice of the 2021 arbitration agreement—which explicitly conditioned Deneau's employment on the acceptance of its detailed terms—constitutes an implied-in-fact agreement to arbitrate her claims. *See Diaz v. Sohnen Enter.*, 34 Cal. App. 5th 126, 130 (2019) ("California law in this area is settled: when an employee continues his or her employment after notification that an agreement to arbitration is a condition of continued employment, that employee has impliedly consented to the arbitration agreement."). Because there is no dispute as to her continued employment, no summary trial regarding the other circumstances surrounding the agreement's formation is necessary.

The only remaining issue is whether the 2021 agreement encompasses her claims, which

---

[3] Nor does this case involve a "boilerplate arbitration clause in a lengthy employee handbook." *Esparza v. Sand & Sea Inc.*, 2 Cal. App. 5th 781, 791 (2016); *see also Mendoza v. Trans Valley Transport*, 75 Cal. App. 5th 748, 790 (2022) (finding the parties had not agreed to arbitrate despite employee's continued employment because employee handbook did not contain a detailed notice of the arbitration policy). Instead, the arbitration agreement at issue was distinct from the employee handbook and provided more than "boilerplate" details about its provisions.

Deneau does not contest.[4] The agreement's language is sweeping in terms of which claims are covered and explicitly includes claims against Covenant Care's "affiliated entities, parents, subsidiaries, agents and/or employees," which would include Coastal and Rehabfocus. The 2021 agreement therefore covers her claims.

Because the Court finds that the 2021 arbitration agreement was both validly formed and encompasses Deneau's claims, the Court orders the parties "to proceed to arbitration." 9 U.S.C. § 4. The 2021 agreement states that "arbitration shall be administered by JAMS [] pursuant to its Employment Arbitration Rules & Procedures." Dkt. No. 15-3, at 10. Because the agreement incorporates the JAMS Rules by reference, the Court orders the arbitration to be conducted by JAMS. *Caviani v. Mentor Graphics Corp.*, 2019 WL 4470820, at *4 (N.D. Cal. Sept. 18, 2019) (finding that incorporation of "JAMS rules by reference is generally sufficient" to order arbitration by JAMS) (citing *Oracle America v. Myriad Group A.G.*, 724 F.3d 1069 (9th Cir. 2013)).

## CONCLUSION

For foregoing reasons, the defendants' motion to compel arbitration of Deneau's claims pursuant to the 2021 agreement is granted. Arbitration between the parties will be conducted by JAMS pursuant to its rules and the matter shall be stayed pending the completion of arbitration. *See Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding."). Defendants shall notify the Court within 14 days after the arbitration is completed, and shall submit a one-page status report by the first day of every September and March in the meantime.

---

[4] The 2021 agreement is broad and covers "any and all existing or future disputes, causes of action, claims or controversies between or among them (including claims by Employee against Employer's affiliated entities, parents, subsidiaries, agents and/or employees) whether or not arising out of or in any way related to Employee's recruitment by, employment with, or termination or separation of employment from Employer." Dkt. No. 15-3, at 9.

7

**IT IS SO ORDERED.**

Dated: August 12, 2024

_____
P. Casey Pitts
United States District Judge